UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| REBECCA JETER, | : | Case No. 3:19-cv-137 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

**I.     Introduction**

Plaintiff Rebecca Jeter brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on January 19, 2016, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and the administrative record (Doc. No. 6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II.     Background

Plaintiff asserts that she has been under a "disability" since April 30, 2008. She was forty-seven years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She subsequently changed age category to "closely approaching advanced age." *Id.* § 404.1563(d). She has a marginal education. *See id.* § 404.1564(b)(2).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6, PageID 37-47); Plaintiff's Statement of Errors (Doc. No. 9); and the Commissioner's Memorandum in Opposition (Doc. No. 12). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III.    Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

> Step 1: Plaintiff did not engage in substantial gainful employment during the period from her alleged onset date, April 30, 2008, through her date last insured, March 31, 2013.
>
> Step 2: She has the severe impairments of COPD/asthma, cervical DDD, and migraine headaches.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazard[s] such as unprotected heights or dangerous machinery; (4) no concentrated exposure to temperature extremes or respiratory irritants; and (5) limited to performing unskilled, simple, repetitive tasks."
>
> Step 4: She is unable to perform any of her past relevant work.
>
> Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. No. 6, PageID 37-47). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 47.

**V.      Discussion**

Plaintiff contends that the ALJ incorrectly created and relied on a residual functional capacity (RFC) that produced relevant work at step five of the sequential process. The Commissioner maintains that substantial evidence supports the ALJ's decision.

"RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. §§ 404.1520(a)(4); 404.1546(c). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted).

Plaintiff asserts that the ALJ erred in determining her RFC because "there are no restrictions in this RFC based on off task allowances in the workplace, or absences, due to migraine headache symptoms." (Doc. No. 9, PageID 1576). According to Plaintiff, "While ALJ Kenyon found Ms. Jeter's migraine headaches severe and noted the condition of left sided tingling and episodes of stuttering, blurry vision, and lightheadedness that accompany her migraine headaches, ALJ Kenyon failed to account in any way for how these conditions would affect Ms. Jeter's ability to stay on task in the workplace, or be present at work, when she is suffering from a migraine headache and

5

these conditions." *Id.* at 1577. This is significant, Plaintiff contends, because the vocational expert testified that an employer will not accommodate an individual missing two days per month or being off task ten percent or more of the time.

But Plaintiff's argument—that ALJ did not account for her migraines and associated symptoms because he did not include off-task allowances or absences—lacks merit. No medical source opined that her migraines and associated symptoms would cause her to be off task more than ten percent of time or absent two or more times a month.[1]

Plaintiff relies on her own testimony from the ALJ's hearing to support her assertion that her migraines and associated symptoms would affect her ability to stay on task or show up to work. Plaintiff testified that she began having migraines in 2009. (Doc. No. 6, PageID 98). When she has a migraine, if she looks at anything, her eyes hurt and burn, and she "can't hardly see nothing." *Id.* at 97. When asked how often she had them, she said she had them every day, and "It was so bad sometimes it would be six a day." *Id.* at 98. But, she later testified, "when I started in 2013 they could last for days. I've had to lay down in a dark room and I couldn't move. I didn't eat or nothing. But ever since I had the stroke, then that's why they haven't been so bad." *Id.* at 109. She testified that at the time of the hearing, she had migraines about three times a week. *Id.* at 98. On a scale from one to ten, Plaintiff said her pain was "[p]robably around an eight or

---

[1] Both record-reviewing physicians found that there was not sufficient evidence in the record to evaluate Plaintiff's claim. (Doc. No. 6, PageID 129, 138). The ALJ assigned little weight to their opinions. *Id.* at 41-42. The ALJ recognized that both physicians have specialized knowledge and experience in evaluating Social Security cases. Nonetheless, he found, "there is more than enough evidence in the record to support a finding" that Plaintiff has several severe impairments. *Id.*

nine." *Id*. Plaintiff testified that she had "tingling and stuff in my face." *Id.* at 103. She attributed it to ongoing effects of two strokes she had in March 2015. *Id*. She "sometimes" has problems with her speech. *Id*.

The ALJ concluded that the extent of Plaintiff's alleged limitations is "largely unsubstantiated by convincing objective medical evidence or clinical findings." *Id.* at 44. However, he recognized that the record supported a history of migraines and symptoms such as tingling on the left side of her face, stuttering, blurry vision, and lightheadedness. To account for these symptoms, the ALJ included several limitations in his RFC assessment: unskilled, simple, repetitive tasks; no climbing ladders, ropes, or scaffolds; no work around dangerous hazards such as unprotected heights or dangerous machinery. (Doc. No. 6, PageID 43.

Plaintiff has not pointed to evidence in the record to support her testimony or to support any greater limitations than those found by the ALJ. Her allegations—without support from the record—are insufficient to show that the ALJ erred. *See Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) ("the lack of objective evidence substantiating the alleged disabling headaches is what precludes the allowance of disability benefits …"); *Campbell v. Colvin*, No. 5:14 CV 526, 2015 WL 631191, at *19 (N.D. Ohio Feb. 12, 2015) (finding that the RFC reasonably accounts for the claimant's migraines when the claimant could not direct the Court to any physician opinion evidence); *Ditmer v. Astrue*, No. 1:10-CV-877, 2012 WL 642851, at *5 (S.D. Ohio Feb. 28, 2012) ("[W]hile the ALJ found that Plaintiff's migraine headaches are a severe impairment, he also found that her subjective complaints about the limitations

7

imposed by those headaches are overstated. Having discounted Plaintiff's credibility on the limitations imposed by her headaches, there was no evidentiary basis upon which to conclude that she would experience excessive absenteeism.")

Plaintiff also contends that ALJ Kenyon "failed to fully consider essential vocational expert testimony that accurately portrays Ms. Jeter's migraine headaches." (Doc. No. 9, PageID 1578). During the hearing, the ALJ asked the vocational expert to assume the existence of a hypothetical individual of Plaintiff's age, education, and prior work experience who was limited to performing medium work with the following restrictions: frequent crouching, crawling, kneeling, stooping, balancing, and climbing ramps or stairs; no climbing ladders, ropes, or scaffolds; no exposure to hazards; no concentrated exposure to temperature extremes or respiratory irritants; unskilled, simple, repetitive tasks. (Doc. No. 6, PageID 114-15). The ALJ asked if the hypothetical person could perform Plaintiff's past work or other jobs. The vocational expert responded that the person could perform Plaintiff's past work as a warehouse worker and housekeeper in addition to other medium unskilled jobs in the national economy. *Id.* at 115. The ALJ then asked if there are any light-level jobs which could be performed with the same non-exertional restrictions. The vocational expert explained that although the Dictionary of Occupational Titles (DOT) classifies housekeeping as a light job, Plaintiff's "exertional level of work as it was done, was done at a medium level." *Id.* at 116. Thus, the hypothetical person could not perform Plaintiff's past work as a housekeeper. However, the person could perform other light-level jobs—for example, inspector/hand packager, mail sorter or clerk, and small parts assembler. *Id*. A limitation to occasional postural

restrictions would not change the available jobs. *Id.* at 116-17. However, if the hypothetical person was absent two times per month, there is no competitive work activity that could be performed. *Id.* at 117. Likewise, if a hypothetical worker needed to be off task ten percent or more of the time, it would be work preclusive. *Id.* at 117-18.

None of the hypotheticals posed to the vocational expert nor his responses are evidence that Plaintiff would be absent two times a month or off task more than ten percent of the day. Although the ALJ asked about absences (and Plaintiff's attorney asked about being off task), his decision not to include those limitations in his RFC assessment does not constitute error because the ALJ's earlier hypothetical question reflected the limitations set forth in the RFC assessment and substantial evidence supports the ALJ's RFC assessment. *See Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) ("'While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'") (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984)); (citing *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir. 1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments.")).

The court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by

9

substantial evidence. *Gayheart,* 710 F.3d at 374. ALJ Kenyon reasonably evaluated the medical evidence, objective medical findings, and Plaintiff's statements and applied the correct legal standards to determine her residual functional capacity that is consistent with the evidence of record.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

Date: September 18, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge